## COMMONWEALTH *vs.* THOMAS CHILDS.

Suffolk. October 3, 2005. - December 15, 2005.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Practice, Criminal,* Instructions to jury. *Homicide. Malice.*

A criminal defendant convicted of murder in the second degree failed to demonstrate, in his motion for a new trial, that the trial judge's erroneous instructions on the third prong of malice, which included language permitting the jury to infer malice from conduct creating the possibility of grievous bodily harm, created a substantial risk of a miscarriage of justice, where the erroneous instructions could not have influenced the jury's verdict, given that, as a matter of law, the defendant's conduct (cocking a loaded gun, keeping his finger on the trigger, and pointing the gun into a car in which three people were seated) created a plain and strong likelihood of death. [531-535]

INDICTMENT found and returned in the Superior Court Department on November 17, 1983.

Following review by this court, 413 Mass. 252 (1992), a motion for a new trial, filed on April 8, 2002, was considered by *Christine M. McEvoy,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Anne M. Thomas,* Assistant District Attorney (*Joshua I. Wall,* Assistant District Attorney, with her) for the Commonwealth.

*Arnold R. Rosenfeld* (*Ashley Handwork* with him) for the defendant.

IRELAND, J. In 1986, the Appeals Court reversed the defendant's 1984 conviction of murder in the second degree and granted him a new trial. *Commonwealth* v. *Childs,* 23 Mass. App. Ct. 33 (1986), *S.C.,* 400 Mass. 1006 (1987). The defendant was convicted of murder in the second degree after retrial in 1988, and the Appeals Court again reversed. *Commonwealth* v. *Childs,* 31 Mass. App. Ct. 64 (1991). On further appellate review, this court upheld the 1988 conviction. *Commonwealth* v. *Childs,* 413 Mass. 252 (1992).

In 2002, the defendant filed a motion for a new trial, arguing that during his 1988 retrial, the trial judge's instructions to the jury concerning third prong malice were erroneous. The trial judge had retired, and the motion was denied by a different judge without a hearing. The Appeals Court reversed in an unpublished memorandum and order pursuant to its rule 1:28, holding that the erroneous third prong malice instructions created a substantial risk of a miscarriage of justice, requiring a new trial. *Commonwealth* v. *Childs*, 62 Mass. App. Ct. 1111 (2004). We granted the Commonwealth's application for further appellate review. Because we conclude that the erroneous jury instructions did not create a substantial risk of a miscarriage of justice,[1] we affirm the Superior Court's denial of the defendant's motion for a new trial.

1. *Facts.* Because the defendant claims an erroneous instruction, we look at the evidence in the light most favorable to the defendant, reserving certain details for our discussion of the issue. At approximately 3 A.M. on August 20, 1983, after a night of heavy drinking, the defendant; his friend Kevin Murphy; Murphy's girl friend, Christa Dent; and Christa's sister, Noel Dent, drove into the parking lot of a Dunkin' Donuts in the Roslindale section of Boston. Christa parked approximately twenty-five to forty feet from another parked car, owned by Bruce Bornstein. Also seated in Bornstein's car were George DeMattia and the victim, Kostas Efstathiou.

Christa and Noel both got out of their car to go into the store. There was conflicting testimony as to what, if anything, was called out to them from Bornstein's car. The defendant and Murphy, however, believed that, among other things, Bornstein and his companions had made a sexual reference to Christa regarding whether she "gave head." In response, the defendant walked to the passenger side of Bornstein's car, and Murphy approached the driver's side. Bornstein was in the driver's seat with his window open; the victim was in the front passenger seat; and DeMattia was in the rear seat behind the victim.

Murphy asked Bornstein if he "had a problem," and a heated

---

[1]Neither party disputes that the defendant did not object to the jury instructions at trial or on direct appeal. Therefore, we consider whether the error created a substantial risk of a miscarriage of justice.

argument quickly ensued. When Bornstein made a move to get out of the car, the defendant, believing a fight was imminent, pulled from his waist a loaded handgun, cocked it, and placed his finger on the trigger. The defendant testified that he cocked the gun to "stop the situation from going any further than it had gone." The evidence then differs as to where the defendant pointed the gun and what happened next.

The defendant claimed that he pointed the gun into the car through the window, but not specifically at the victim or any other person. The defendant stated that the victim, who had been silent and uninvolved in the argument, suddenly came forward in his seat and hit the defendant's hand, causing the gun to discharge and fatally injure the victim. However, Bornstein testified that the defendant pointed the gun at the victim's face. Bornstein stated that after the victim pushed the gun away, the defendant repositioned the gun at the victim's face and pulled the trigger, shooting the victim in the mouth from approximately two feet away. The victim died as a result of a gunshot wound to the brain.

Evidence presented at the 1988 trial supported both versions of the facts. Bornstein's testimony closely matched the testimony given in the 1984 trial by DeMattia,[2] who was seated behind the victim at the time of the shooting. The Commonwealth did not present expert testimony regarding ballistic evidence. The defendant offered expert evidence from a weapons expert suggesting that the gun had been shot accidentally. The defendant also produced a medical witness who opined that, because of the defendant's state of extreme intoxication, he could have depressed the trigger of the gun without consciously intending to do so.

2. *Jury instructions on third prong malice.* It is undisputed that the judge erroneously instructed the jury twice on third prong malice.[3] A proper jury instruction on third prong malice includes language requiring the jury to find a "plain and strong

---

[2]DeMattia was unavailable to testify at the 1988 trial; however, his testimony and cross-examination were read to the jury at the 1988 trial.

[3]The judge initially instructed the jury on third prong malice as follows:

"Malice aforethought includes any unexcused intent to kill, to do grievous bodily harm, to do an act creating a plain and strong likeli-

likelihood of death," but not "grievous bodily harm." *Commonwealth* v. *Vizcarrondo*, 427 Mass. 392, 395 (1998), *S.C.*, 431 Mass. 360 (2000). The defendant claims that the judge's instructions including the "grievous bodily harm" language created a substantial risk of a miscarriage of justice, because the instructions obscured the distinction between murder in the second degree and manslaughter.[4] The defendant contends that the erroneous charge may have caused the jury to convict him of second degree murder, rather than manslaughter, because the jury could have mistakenly believed that malice may be inferred from conduct creating the possibility of "grievous bodily harm." We disagree. In reaching this conclusion, we have considered "the error in the context of the entire trial," *Commonwealth* v. *Russell*, 439 Mass. 340, 345 (2003), quoting *Commonwealth* v. *Randolph*, 438 Mass. 290, 298 (2002), and examined "the evidence and the case as a whole." *Commonwealth* v. *Russell*, *supra*, quoting *Commonwealth* v. *Azar*, 435 Mass. 675, 687 (2002).

Where a defendant's conduct is inherently deadly, we have concluded that an erroneous third prong malice instruction is

---

hood that death or *grievous bodily harm* would follow. Malice may be inferred on the circumstances known to the defendant, that a reasonably prudent person would have known, that according to common experience, there is a plain and strong likelihood . . . that death would follow the contemplated act. If you think that death or *grievous bodily injury* would be an obvious sequence of the defendant's action, and the circumstances known to him, you may infer that the defendant intended to act with malice." (Emphasis added.)

On the second day of jury deliberations, the jury inquired about the elements of manslaughter and murder in the second degree, including the definition of malice. Although there is no official transcript of the judge's supplemental instruction in response to the jury's questions, the parties stipulated that the judge instructed the jury that they could find the defendant guilty of murder in the second degree if he acted with malice in either of the following two circumstances: "First, if they found that [the defendant] shot the victim . . . with the conscious intention to kill him, *or* second, if they found that [the defendant] had acted in a way to create a situation in which *grievous bodily injury* would be an obvious consequence of his conduct, even if they did not find that [the defendant] consciously intended to shoot the victim" (emphasis added).

[4] The judge instructed the jury on the elements of both voluntary and involuntary manslaughter. Neither party argues that these instructions were incorrect.

nonprejudicial to the defendant. *Commonwealth* v. *Russell, supra* at 346. This court has held that if a defendant's actions pose a risk of harm that is equivalent to a plain and strong likelihood of death, an erroneous third prong malice instruction does not by itself create a substantial risk of a miscarriage of justice. *Id.* In the *Russell* case, the victim died as a result of being hit by a car driven by the defendant, following an argument between the defendant and the victim. The defendant claimed he never saw the victim on the street before hitting her, and it was therefore an accident. *Id.* at 348. This court held that the jury must have found the defendant's actions to be intentional, and that the intentional running down of a person with a car poses a plain and strong likelihood of death. *Id.* at 350-351.

Here, the defendant, who testified that he was trained to use the gun and had fired at least fifty rounds, cocked his loaded gun, kept his finger on the trigger, and pointed it into the car. Even if we accept the defendant's testimony that he did not aim the gun at any specific person, but just generally pointed it into the vehicle, the act of cocking a loaded gun and pointing it into a car in which three people are seated creates a plain and strong likelihood of death to one of them. The defendant himself admitted in his testimony that cocking the weapon made it easier to fire. In addition, according to the defendant's version of the events, the gun was close enough to the victim for him to reach up and hit it with his hand. A reasonably prudent person would have known, according to common experience, that such circumstances created plain and strong likelihood that death would follow the contemplated act, and thus malice can be properly inferred by a jury. See *Commonwealth* v. *Sama*, 411 Mass. 293, 298 (1991); *Commonwealth* v. *Grey*, 399 Mass. 469, 470-472 nn.1, 4 (1987).

The Appeals Court stated in its memorandum that a strong likelihood of death is not "the *only risk* presented by the *pointing* of a cocked and loaded gun into a car occupied by three people . . . . Rather, a jury could reasonably determine that such an action creates a plain and strong likelihood of serious bodily injury, but not necessarily a strong likelihood of death." However, we do not suggest that death was the *only* risk or outcome possible to arise from the defendant's actions. We

instead hold that, while there may have been other results possible, the defendant's act of cocking a gun and pointing it into a car containing three people did make death a highly probable outcome and therefore created a plain and strong likelihood of death. The risk posed by the defendant's conduct was the risk that the gun would go off, and a gun firing in such close proximity to three persons raises a plain and strong likelihood of death. The erroneous jury instructions, therefore, could not have affected the jury's verdict because "the evidence [did] not warrant a finding of a risk of harm less than a strong likelihood of death" to one of the occupants. *Commonwealth* v. *Dahl*, 430 Mass. 813, 826 (2000), quoting *Commonwealth* v. *Fryar*, 425 Mass. 237, 248, cert. denied, 522 U.S. 1033 (1997).[5] Cf. *Commonwealth* v. *Vizcarrondo, supra* at 395, 397 (holding that use of "grievous bodily injury" language in third prong malice jury instruction created substantial likelihood of a miscarriage of justice where striking infant could be seen as posing likelihood of grievous bodily injury but not necessarily likelihood of death).

Our conclusion is consistent with other decisions that have held that conduct similar to the defendant's amounts to knowledge that there is a plain and strong likelihood of death, as a matter of law. See *Commonwealth* v. *Jenks*, 426 Mass. 582, 586 (1998) (firing gun seven times in a crowded dance hall, though the defendant claimed no intention to hit anyone, creates a risk of harm that is consistent only with malice); *Commonwealth* v. *Mack*, 423 Mass. 288, 290 (1996) (intentionally discharging firearm in direction of another person creates plain and strong likelihood of death); *Commonwealth* v. *Niland*, 45 Mass. App. Ct. 526, 527, 532 n.4 (1998) (finding plain and

---

[5]The trial judge in *Commonwealth* v. *Dahl*, 430 Mass. 813 (2000), also similarly used the improper "bodily harm" language twice — once in his jury instructions, and once in his supplemental instructions in response to a jury question during deliberations. *Id.* at 826. Where the evidence supports a finding of a strong likelihood of death, the repetition of the improper language does not make it more likely that the jury based their ultimate finding of malice on the improper "bodily harm" language. In the *Dahl* case, the defendant jabbed the victim repeatedly with the jagged end of a broken golf club, using it as a spear and impaling the victim with it. *Id.* at 815. This Court found that such conduct created a risk of harm equivalent to a strong likelihood of death. *Id.* at 826.

strong likelihood of death, as matter of law, where defendant shot another in face with rifle at range of one foot, although defendant was allegedly just cleaning gun). At trial, the defendant consistently presented the defense that the gun went off accidentally, and that while he may have been negligent in cocking the gun, he did not intend to fire it. The lack of an intention to shoot someone is immaterial where the conduct itself is inherently deadly. See *Commonwealth* v. *Jenks, supra*; *Commonwealth* v. *Niland, supra* at 532.

Finally, the defendant contends that the judge's erroneous jury instruction effectively eliminated his defense that the victim's death was accidental or negligent. However, the judge instructed the jury on the issue of accident, telling them, inter alia, that "[i]f the Commonwealth has failed to prove to you beyond a reasonable doubt that what occurred was not an accident, then you must find the defendant not guilty." We conclude, as this court held in the *Russell* case, that the jury found against the defendant on his defense theory before even reaching the issue of malice.

3. *Conclusion.* For the reasons set forth above, we conclude that the erroneous third prong malice instruction did not create a substantial risk of a miscarriage of justice.

> *Order denying motion for a new trial affirmed.*