Gaziano, J.
(concurring, with whom Lowy and Cypher, JJ., join). A rapist smothers a distraught child victim to silence her sobbing. To his surprise, the child dies. An armed robber enters a convenience store and threatens the store clerk with a handgun. The store clerk, frozen in fear, fails to comply with his demands. The frustrated armed robber vaults over the counter to empty the cash register, and in the process accidently discharges a fatal shot. See Binder, The Culpability of Felony Murder, 83 Notre Dame L. Rev. 965, 966 (2008) (Binder I). Neither of these offenders would be convicted of murder under Chief Justice Gants’s abrogated *837 version of felony-murder. In this view, charging the rapist and the armed robber with murder would be unfair and unjust because each’s criminal liability is disconnected from moral culpability for the respective crimes. This approach, which is predicated on an extremely narrow view of moral culpability (or blameworthiness), diminishes the seriousness of violent felonies that result in the deaths of innocent victims.[1]
Although an offender’s mental state is an important component of assessing blameworthiness, it is not “the only legitimate determinant of the grade of a homicide resulting from a felony.” Crump & Crump, In Defense of the Felony Murder Doctrine, 8 Harv. J.L. & Pub. Pol’y 359, 366 (1985) (Crump). See Binder I, supra at 1059 (accurate assessment of culpability requires consideration of fatal result). It is a fundamental tenet of criminal law that blameworthiness is premised on two factors, not just the offender’s state of mind. Commonwealth v. Lopez, 433 Mass. 722, 725 (2001), citing Morissette v. United States, 342 U.S. 246, 250 (1952). A criminal defendant’s blameworthiness depends on “a showing that the prohibited conduct (actus reus) was committed with the concomitant mental state (mens rea) prescribed for the offense.” Lopez, supra, citing Morissette, supra. See Crump, supra at 362 (“Differences in result must be taken into account as part of actus reus if classification and grading are to be rational”). The actus reus component of a criminal offense refers to all the physical elements of the crime, including the individual’s offense conduct and the consequences of the act. See Commonwealth v. Williams, 399 Mass. 60, 64-65 (1987). See also Black’s Law Dictionary 44 (10th ed. 2014) (actus reus includes attendant circumstances and societal harm caused by criminal act, all of which make up physical components of offense).
The criminal law, in general, considers the harm caused by an individual in evaluating the severity of an offense. Binder, Mak *838 ing the Best of Felony Murder, 91 B.U. L. Rev. 403, 427 (2011) (Binder II) (“the evaluation of ends pervades American criminal law”). Chief Justice Gants’s exclusive focus on the mens rea component of the crime ignores the human costs of an offender’s actions, and overlooks numerous examples in the criminal law to the contrary. For example, it is a misdemeanor to drive a motor vehicle while under the influence of alcohol. See G. L. c. 90, § 24. If one intoxicated driver strikes and kills a pedestrian, whereas another manages to avoid any accident, the former offense is elevated to the serious felony of motor vehicle homicide. See G. L. c. 90, § 24G (a). A defendant who shoots and kills his or her intended target, and an individual who attempts to shoot someone but misses, may share the same intent to kill, yet it is clear that they are not equally blameworthy. See Commonwealth v. LaBrie, 473 Mass. 754, 760 (2016) (discussing mens rea of attempted murder).
To provide needed context, I address several instances where blameworthy defendants, who did not kill intentionally or recklessly, were convicted of felony-murder in the first degree. Each of these defendants would not be convicted of murder under Chief Justice Gants’s reformulation of the felony-murder rule.
In October, 1993, a farmhand named Robert Wade abducted the farm owner’s eighty-three year old mother from her house. Wade dragged the victim, who suffered from Alzheimer’s disease, along a dirt road to the shack where he lived. Commonwealth v. Wade, 428 Mass. 147, 147-149 (1998). In the process, the victim’s shoulders, knees, and buttocks were badly scraped, and gravel was embedded in the torn tissue of her back. Id. at 149. Wade brutally raped her. Id. at 148. “The victim’s clothing [was] torn and was covered with human blood. She . .. suffered bruises to her eyes and to her neck . . . , her left wrist was fractured and there was evidence that she . . . suffered a blow to the head.” Id. at 148-149. The farmer found his mother lying naked on the defendant’s bed. Id. at 148. Her hip had been fractured during the sexual assault. Id. at 149. She had hip replacement surgery but contracted pneumonia and died three weeks after the rape. Id. The court affirmed the defendant’s conviction of felony-murder in the first degree with aggravated rape as the predicate felony. Id. at 147-148. The court also determined that there was no basis on which to grant relief under G. L. c. 278, § 33E, for this “brutal *839 attack on a vulnerable, older woman.” Id. at 155.[2]’[3]
On March 28, 1980, William Griffith spent the evening smoking marijuana, ingesting cocaine, and drinking alcohol. Commonwealth v. Griffith, 404 Mass. 256, 258 (1989). Thereafter, he announced that he was going to rob a convenience store located about a block away. Id. Griffith waited for the store to empty of customers and entered armed with a revolver. Id. He demanded money from the victim at gunpoint. Id. The victim managed to slip away during a chaotic moment when his wife confronted Griffith. Id. The victim then emerged from a back room armed with a baseball bat and struck Griffith on the shoulder, head, and arm. Id. During this confrontation, Griffith accidently shot the victim in the head. Id. The defendant was convicted of felony-murder, and the court concluded that his claim that the shooting was an accident did not absolve him of liability. Id. 257, 260-261. ‘“A defendant who kills a victim in the commission or attempted commission of a robbery, while the defendant is armed with a gun, is guilty of murder by application of the felony-murder rule. . . . The fact that, according to the defendant, the gun was discharged accidently is of no consequence.” Id. at 261, quoting *840 Commonwealth v. Evans, 390 Mass. 144, 151-152 (1983). See Commonwealth v. Neves, 474 Mass. 355, 371 (2016) (defendant convicted of felony-murder in death of taxicab driver notwithstanding defendant’s claim that gun discharged accidently when victim accelerated and grabbed his hand).
The second issue raised in Chief Justice Gants’s concurrence involves the imposition of vicarious criminal liability for every act committed by an accomplice, in furtherance of the felony, that results in death. See Commonwealth v. Tejeda, 473 Mass. 269, 276 (2015). Under this reformulation of felony-murder, an accomplice would be liable for a death resulting from the commission of a felony only if the Commonwealth were able to prove that he or she shared the intent of a joint venturer who acted with malice.
Chief Justice Gants’s concurrence repudiates the court’s recent decision in Commonwealth v. Hanright, 466 Mass. 303, 310 (2013). In that case, the nineteen year old defendant participated in a masked armed robbery of a department store by an acquaintance, Domenic Cinelli. Id. at 304-305. The defendant, who was unarmed, walked to the store with Cinelli and waited outside while Cinelli entered. Id. at 306. He told the police that he did not act as a lookout. Id. He claimed that he merely went along because he was afraid of Cinelli, and because he hoped to share in some of the proceeds from the robbery. Id, Responding to a report of a robbery in progress, police observed the defendant standing outside, but focused on Cinelli, who left the store carrying a duffle bag. Id, Cinelli pointed a gun at the first responding officer, a chase ensued, and Cinelli fatally shot one of the officers. Id, The defendant had walked away from the store during the pursuit and was not involved in the subsequent confrontation. Id,
Addressing joint venture liability for escape-related crimes, the court stated, “To establish liability for felony-murder on a theory of joint venture the Commonwealth must prove ‘that a homicide occurred in the commission or attempted commission of that felony[.] [Cjomplicity in the underlying felony is sufficient to establish guilt of murder in the first or second degree if the homicide . . . followed naturally and probably from the carrying out of the joint enterprise’ ” (emphasis in original; citation omitted). Id, at 307. Recognizing that “the felony-murder rule operates according to a unique set of principles,” the court concluded that the felony-murder doctrine allowed a jury to find the defend *841 ant liable for the police officer’s death by virtue of his complicity in the underlying armed robbery. Id. at 308-309. Thus, the jury were not required to find that the defendant specifically intended to harm the officer. Id. See Commonwealth v. Devereaux, 256 Mass. 387, 392 (1926) (“it is no defence for the associates engaged with others in the commission of a robbery, that they did not intend to take life in its perpetration, or that they forbade their companions to kill”).
The conclusion reached by Chief Justice Gants is that revision of the common-law felony-murder rule is necessary to vanquish the “fiction of constructive malice” and yield “verdicts that are just and fair in light of the defendant’s criminal conduct.” See ante at 825, 836. Yet, under this narrowed version of felony-murder, the defendant in this case likely would be convicted of murder in the first degree on the basis of his joint participation in an act of third prong malice.
Chief Justice Gants describes joint venture felony-murder liability as follows: “a defendant who commits an armed robbery as a joint venturer will be found guilty of murder where a killing was committed in the course of that robbery if he or she knowingly participated in the killing with the intent required to commit it — that is, with the intent either to kill, to cause grievous bodily harm, or to do an act which, in the circumstances known to the defendant, a reasonable person would have known created a plain and strong likelihood that death would result.” Ante at 832.
Here, the Commonwealth established that the defendant knowingly participated in the killing by supplying an accomplice with a loaded .380 handgun and other accomplices with hooded sweatshirts to be used to conceal their identities. See Commonwealth v. Zanetti, 454 Mass. 449, 470 (2009) (Appendix) (knowing participation includes aid or assistance in committing the crime). The evidence also would support a reasonable inference that the defendant had or shared the intent to carry out the crime of armed home invasion or armed robbery. The defendant supplied the handgun and disguises knowing that his accomplices were planning to enter an occupied residence at night to rob two large men, both drug dealers, at gunpoint. In Commonwealth v. Selby, 426 Mass. 168, 172 (1997), the court concluded that a jury could infer third-prong malice from evidence that an individual entered an occupied house, carrying a loaded firearm, with the intent to commit a robbery. See Commonwealth v. Childs, 445 Mass. 529, 533 (2005) (act of cocking and pointing loaded gun at three *842 people creates plain and strong likelihood of death to one of them).
In Commonwealth v. Rolon, 438 Mass. 808, 824 (2003), the court noted that “the doctrines of felony-murder and joint venture may, on some hypothetical fact patterns, produce a conviction of murder in the hrst degree that would appear out of proportion to a defendant’s culpability.” The reasonable and far simpler remedy to the problem of a disproportionate conviction of murder in the hrst degree is to exercise the court’s statutory authority under G. L. c. 278, § 33E, to reduce the verdict in those extraordinary cases not consonant with justice. See Zanetti, 454 Mass. at 466 (“All of this . . . might be tolerable if there were no reasonable alternahve, but there is a reasonable, and far simpler, alternative . . .”). As Chief Justice Gants’s concurrence points out, this is the hrst time that the court has exercised its authority under G. L. c. 278, § 33E, to reduce a convichon of felony-murder in the hrst degree in similar circumstances. See ante at 826 n.1.
Thus, rather than abolish common-law felony-murder, Chief Jushce Gants’s concurrence offers a muddled version of the same crime. In the future, felony-murder liability will hinge on hne gradahons between third-prong malice, wanton and reckless involuntary manslaughter, negligence, and accident — with predictably unpredictable results. See Crump, supra at 372 (discussing disparity in verdicts created by ambiguous felony-murder rule). To be sure, there will be instances where morally culpable individuals will not be held responsible for the death of a rape victim, gasoline stahon attendant, or convenience store clerk. Rather than create such confusion, I would, instead, rely on the existing mechanism under G. L. c. 278, § 33E, to remedy those rare cases, such as the one presented here, where a verdict is not consonant with the interests of justice. In my view, the abrogation of common-law felony-murder to address the perceived unfairness of this convichon, at the expense of innocent victims of violent crime, is not necessary.

Tlie concurring opinion by Chief Justice Gants relies on Commonwealth v. Matchett, 386 Mass. 492, 507 (1982), in support of the proposition that application of the felony-murder rule erodes “the relation between criminal liability and moral culpability.” Ante at 832. Prior to the decision in that case, “a defendant could be found guilty of murder on a theory of felony-murder if he or she committed a homicide while engaged in the commission or attempted commission of a felony punishable by life in prison.” Commonwealth v. Prater, 431 Mass. 86, 95 (2000). In Matchett, supra, we addressed those concerns by narrowing the scope of the felony-murder rule to require that the Commonwealth prove that the underlying felony is either inherently dangerous to human life or was committed with a conscious disregard of the risk to human life.

The court’s decision in Commonwealth v. Wade, 428 Mass. 147, 147-149 (1998), supports the position that a rapist whose actions result in death, regardless of whether the death is intended, is sufficiently blameworthy for the imposition of felony-murder liability due to the depraved nature of this crime.
“To compel another by force to acquiesce in the violation of an important right is to express contempt for a victim’s autonomy and status by asserting mastery over him or her. The death of a victim under the offender’s dominion and as a result of the offender’s coercion, typifies the wrongfulness of assuming power over another’s fate in order to wrong her. Felony murder rules appropriately impose liability for negligently causing death for a very depraved motive, as long as the predicate felony involves coercion or destruction, and a felonious purpose independent of the fatal injury. In evaluating the offender’s motives, felony murder rules are compatible with other rules of American criminal law . . . .”
Binder, The Culpability of Felony Murder, 83 Notre Dame L. Rev. 965, 1059-1060 (2008) (Binder I).

According to Chief Justice Gants’s concurrence, the factual scenarios discussed above, in which the victim was killed in the course of a sexual assault, would result in a conviction of murder. This is a misreading of the fact patterns. The rapist described in the hypothetical is intent on one “selfish aim[ ],” and does not recognize the obvious risks that his conduct imposes on the victim. Binder I, supra at 966. Similarly, Robert Wade’s intent was to abduct and rape the elderly victim; he dragged her out of the farmhouse and beat her to accomplish this purpose. She died weeks later due to medical complications. Wade, 428 Mass. at 147-149.