## COMMONWEALTH *vs.* WARREN A. GIBSON.

Norfolk. January 6, 1997. - February 11, 1997.

Present: WILKINS, C.J., O'CONNOR, GREANEY, FRIED, & MARSHALL, JJ.

*Practice, Criminal,* Instructions to jury, Presumptions and burden of proof. *Malice. Intent. Error, Harmless. Homicide. Self-Defense.*

At the trial of an indictment for murder in the first degree, error in the judge's instruction on inferred malice in connection with murder in the second degree was harmless beyond a reasonable doubt, where the instruction could not have had an impact on the jury's verdict of murder in the first degree or on the issue of self-defense, inasmuch as the verdict necessarily included a finding of premeditation and deliberation. [245-249]

INDICTMENT found and returned in the Superior Court Department on June 4, 1973.

Following review by this court, 368 Mass. 518 (1975), and 377 Mass. 539 (1979), a motion for a new trial, filed on February 4, 1992, was heard by *John C. Cratsley*, J.

*Robert C. Cosgrove*, Assistant District Attorney, for the Commonwealth.

*Bruce R. Taub* for the defendant.

GREANEY, J. The defendant, Warren A. Gibson, was convicted of murder in the first degree by reason of deliberate premeditation on April 17, 1974, and we affirmed the conviction on August 22, 1975. We concluded that there was no error and, after plenary review pursuant to G. L. c. 278, § 33E, that "the evidence amply supported the verdict, that there was no miscarriage of justice, and this is not an appropriate case in which to order a new trial or direct the entry of a verdict of a lesser degree of guilt." *Commonwealth* v. *Gibson*, 368 Mass. 518, 528 (1975) (*Gibson I*). On March 16, 1979, we rejected the defendant's "writ of error" which alleged that the trial judge's instructions to the jury on self-defense and manslaughter by excessive force improperly shifted the burden of

proof to him. *Gibson* v. *Commonwealth*, 377 Mass. 539, 539 (1979) (*Gibson II*). The defendant thereafter filed a second motion for a new trial claiming that one part of the trial judge's instructions on malice improperly shifted the burden of proof to him. By a memorandum of decision entered on September 25, 1995, a judge in the Superior Court granted the defendant's motion and ordered a new trial. The Commonwealth has appealed. We vacate the order granting a new trial.

The evidence at the defendant's trial is set forth at length in the opinion deciding his direct appeal, *Gibson I, supra* at 519-522, and we need not repeat it here. It is sufficient to point out the following as background. The Commonwealth presented evidence that, on the night of May 28, 1973, the defendant and the victim had a confrontation at a café, during which the defendant made statements about "going to jail" and shooting people.[1] Both men had been drinking, and by the time the café closed at 1 A.M., the victim was quite drunk. The defendant, who had armed himself with a gun, challenged the victim to meet him at Kramer's Dairy Bar. The victim and the defendant were last seen together about 1:15 A.M. outside the dairy bar. The victim was found dead the next morning. He had been shot twice.[2] The defendant testified that there had been no confrontation in the cafe and that he was on his way home when he heard an automobile horn blow. The defendant pulled into the Dairy Bar and got out of his automobile. The victim and an unidentified man approached the defendant, and the victim called the defen-

---

[1]During the encounter, the defendant said in the victim's presence, "I'm going to jail anyway," or "I'm going to Walpole anyways tonight. I don't care." Later, the defendant talked about guns and shooting people. In the words of one witness, the defendant said "that he liked nothing better than to see a man grab his heart after he had been hit." In the words of a witness, the defendant "was showing . . . how people go through changes when they got shot in the heart." Another witness testified that the defendant said to the victim, "I would like to see a man go through changes when he gets busted in the heart." *Commonwealth* v. *Gibson*, 368 Mass. 518, 520 (1975).

[2]The autopsy disclosed that one bullet had entered the base of the victim's right lower neck or the upper part of the back and passed through the neck, coming out on the left back side of the neck. The other bullet perforated the skin at the level of the right second rib and from there entered the chest cavity, perforating the upper lobe of the right lung. It also completely disrupted and perforated the victim's aorta.

dant a vile name. The victim continued to approach the defendant until the unknown third person stated, "Let's." The defendant pulled out his gun, which he testified he had placed in his belt so as not to forget it, and thinking that the victim had a knife, fired the gun without aiming it. According to the defendant, the victim and the unknown third person walked away. Later the defendant realized that the victim had been seriously injured and reported the incident to the police. The evidence at trial was sufficient to warrant the defendant's conviction of murder in the first degree by reason of deliberate premeditation and to raise an issue as to self-defense.

The trial judge instructed the jury on all the issues in the case, including murder in the first degree by reason of deliberate premeditation, murder in the second degree, voluntary and involuntary manslaughter, and self-defense, including the use of excessive force. The instructions cover fifty-seven pages of transcript and, in the explanation of malice in connection with murder in the second degree, contained the following statement on inferred malice:

> "Now, let's see if I can give you an example of [inferred malice]. Let's assume here that I take out a revolver and I point it at the Foreman and I know the gun is loaded and I know that if I pull the trigger the hammer will go down and the bullet will hit the Foreman, if I aim it at him. Now, in doing that, although I never saw the Foreman before, never spoke to him, had no reason to hate him, the law says that the act on my part shows malice, implied malice. Malice in murder means knowledge of such circumstances that according to common experience has a plain and strong likelihood that death will follow the contemplated act, coupled with an implied negation of any excuse or justification for that act."

The jury convicted the defendant of murder in the first degree by reason of deliberate premeditation. The judge who allowed the motion for a new trial now before us concluded that the instruction improperly shifted the burden of proof to the defendant by "inform[ing] the jury in the factual context of the case they were deciding that if they found that the defendant . . . knowingly shot the gun at the deceased, they were to presume malice whether or not the Commonwealth proved

the element of malice beyond a reasonable doubt." The motion judge also concluded that nothing else in the trial judge's instructions adequately explained the flawed instruction so, in his view, a new trial was required.

1. We agree with the motion judge that the challenged instruction was defective. There was no question that the defendant shot the victim twice, once in the neck and once in the heart. See note 2, *supra*. The critical issue in the case was the defendant's intent — did he shoot the victim with a specific intent to kill, or did he shoot the victim without such an intent, as an act of self-defense that could justify the shooting, or (if the means of defense was found to be excessive) permit a finding of voluntary manslaughter and not murder? Although the Commonwealth argues that the challenged instruction is generally accurate because it did not use the word "presume," and was designed to focus the jury's attention on the purposeful aiming of a gun by a hypothetical shooter (where the defendant had testified that he had fired the gun at the victim without aiming), the instruction omits any reference to the pivotal issue of the shooter's intent. At the very least, standing alone, the instruction could have confused a reasonable juror into thinking that malice on the part of the defendant had been proved if the juror found, without regard to the defendant's actual intent, that the defendant had aimed the gun and fired at the victim. Thus, if considered in isolation, the faulty language might be perceived, because of the fact of the killing alone, as tending to relieve the Commonwealth of its burden of proving malice beyond a reasonable doubt. The instruction, therefore, was in violation of the principles expressed in *Sandstrom* v. *Montana*, 442 U.S. 510 (1979), and *Francis* v. *Franklin*, 471 U.S. 307 (1985).

2. This is not the end of the inquiry, however, because we must decide whether the error was harmless. That question is a constitutional one. It is settled that "the harmless error standard of *Chapman* v. *California*, 386 U.S. 18 (1987), applies to jury instructions that violate the principles of [*Sandstrom*] and [*Francis*]." *Rose* v. *Clarke*, 478 U.S. 570, 572, 582 (1986). If it can be said with reasonable confidence that the error did not contribute to the verdict, then it was harmless. *Yates* v. *Evatt*, 500 U.S. 391, 402-403 (1991). "To say that an error did not contribute to the verdict is, rather, to find that

error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record. Thus, to say that an instruction to apply an unconstitutional presumption did not contribute to the verdict is to make a judgment about the significance of the presumption to reasonable jurors, when measured against the other evidence [and instructions] considered by those jurors independently of the presumption." *Id.* at 403-404.

3. We conclude that the error was harmless. The jury knew that they had to resolve the conflict in the evidence concerning the defendant's intent at the time of the shooting. They were told that it was the Commonwealth's burden to establish the defendant's guilt beyond a reasonable doubt, and they were given proper instructions explaining the concept of reasonable doubt. In particular, they were told that "any reasonable doubt of the *existence of any fact* which is essential to the guilt of the defendant" would require an acquittal. The jury appear to have rejected the possibility of murder in the second degree (which was the subject of the faulty instruction), and they found the defendant guilty of murder in the first degree by reason of deliberate premeditation.[3] The judge's instructions on the element of premeditation were comprehensive and correct. The instructions extensively explained (to the point of belaboring) that murder in the first degree by reason of deliberate premeditation required an express finding by the jury that the defendant acted with purposeful calculation in shooting the victim and thus acted with a focused and specific intent to kill. The judge told the jury that "[d]eliberate premeditation means that the defendant planned [the killing] beforehand or he thought or reflected about it beforehand, not necessarily a week before, not necessarily an hour before, but he did think about it before . . . he did it. It means purposeful, a thing done with a purpose or for a purpose as distinguished from killing by accident." The judge emphasized that deliberately premeditated malice means a killing that is "resolved upon beforehand," something that is "planned some time before" and reflected on for "enough time to form a

---

[3]The defendant's own testimony that he had fired the gun without aiming eliminated any issue as to accident (which was not made the subject of an express instruction). The evidence did not support instruction on involuntary manslaughter, although the trial judge chose to instruct the jury on the elements of that crime.

clear intent." The judge went on to repeat these key concepts in the language set forth below.[4]

It is established that deliberate premeditation requires either a specific intent to kill that equates with express malice, see *Commonwealth* v. *Waite*, 422 Mass. 792, 804 (1996); *Commonwealth* v. *Plunkett*, 422 Mass. 634, 637 (1996); *Commonwealth* v. *Judge*, 420 Mass. 433, 441 & n.6 (1995); *Commonwealth* v. *Chipman*, 418 Mass. 262, 269 (1994) or, as it has sometimes been put, an intent to kill, combined with planning how to effectuate that desire and an evaluation of the "pros and cons" of proceeding, see *Commonwealth* v. *Gould*, 380 Mass. 672, 683 (1980). In the face of the trial judge's instructions, the inferred malice instruction could have had no impact because a reasonable juror could only have understood that a guilty verdict of murder in the first degree by reason of deliberate premeditation required a finding of purposeful conduct that included a finding beyond a reasonable doubt of a specific intent to kill. See *Yates* v. *Evatt*, *supra* at 402 (error in an instruction violating *Sandstrom* and *Franklin* harmless where jury actually rest their verdict on evidence establishing presumed fact beyond a reasonable doubt, independently of presumption). See also *State* v. *Mc-Coy*, 320 N.C. 581, 588 (1987) (jury's finding beyond a reasonable doubt that defendant murdered victim after premeditation and deliberation "renders harmless any instructional errors on the element of malice which improperly relieve[d] the State of its burden of proof").

Nor could the instruction have had an impact on the issue of self-defense or manslaughter by excessive force. The jury

[4]"To constitute deliberate premeditation, the killer must plan beforehand not only the act by which he is going to murder but also the murder which follows the act. The murder must be committed pursuant to the plan formed after the defendant has thus made it the subject of deliberation or reflection. Although in view of the quickness with which the mind may act, this deliberation or reflection may have been measured by seconds or long enough before the act was done to warrant the inference that it was so thought upon and resolved.

"If you find that the purpose or plan was distinctly formed and concluded before the act or shots were delivered here, even though it was the speediest of deliberation or reflection, then you could say that it became a distinct resolution of the mind or that it was deliberately premeditated malice and murder in the first degree. Of course, it goes without saying that the deliberation may have been entertained over a period of minutes or hours or days and need not be speedy deliberation."

knew that the Commonwealth was required to prove beyond a reasonable doubt that there was no legal justification or mitigation. The trial judge adequately explained the principles of self-defense, indicating that self-defense might excuse the killing altogether, or that its presence could lead to a finding of manslaughter if the defendant's use of the gun was "unreasonable and clearly excessive" as a means of self-defense. *Gibson II, supra* at 541. Although, in his instructions on manslaughter by excessive force, the trial judge mentioned the "presumption" of malice that arises "[w]here an unlawful killing is committed by the intentional use of a deadly weapon," that reference could not have misled the jury in light of instructions that equated "presumptions" with "inferences" as "probable natural explanation of facts aris[ing] from the commonly accepted experiences of mankind." *Id.* at 542. A reasonable juror had to know that the presence of self-defense could create a reasonable doubt, that self-defense with excessive force was a basis for a verdict of manslaughter, and, importantly, that a finding that the Commonwealth had proved deliberate premeditation beyond a reasonable doubt eliminated murder in the second degree as well as self-defense in any of its aspects. As we said in *Gibson II, supra* at 543: "It seems clear that the jury did not think the defendant's version [of the shooting] raised a reasonable doubt as to anything. That version was entirely inconsistent with deliberate premeditation, and the jury's verdict necessarily included a finding of deliberate premeditation."

4. "Lawyers and judges parse challenged jury instructions, with days to reflect on language that appears before them in writing, to satisfy themselves whether an instruction is or is not constitutionally correct. Lay people hear the judge's words, untuned by training to the implication of the words and unaided by having them in writing. In such situations, the reasonable impression that a jury would have from the judge's instructions as to their fact-finding obligations should be an important factor in deciding the merits of a claim that ambiguous language in a charge creates an impermissible presumption requiring reversal of the conviction. This seems to be what the Supreme Court is saying in *Yates* v. *Evatt, supra.*" *Commonwealth* v. *Doherty,* 411 Mass. 95, 105 (1991), cert. denied, 502 U.S. 1094 (1992). That is the situation here because the flawed instruction dealt primarily with the malice

needed for murder in the second degree, a theory apparently rejected by the jury, whose verdict dealt with the case in mutually exclusive terms of deliberate premeditation (which required a finding of express malice) and self-defense.

The allowance of the defendant's motion for a new trial is vacated, and the motion is denied.

*So ordered.*