COMMONWEALTH vs. ALFRED JENKS.

Essex. January 6, 1998. - February 3, 1998.

Present: WILKINS, C.J., LYNCH, GREANEY, FRIED, & IRELAND, JJ.

*Homicide. Malice. Practice, Criminal,* Instructions to jury, New trial, Assistance of counsel, Capital case. *Grand Jury.*

At a trial of an indictment for murder in the first degree by reason of deliberate premeditation, no substantial likelihood of a miscarriage of justice was created by the judge's instructions to the jury on the second and third prongs of malice, where the judge's instruction on deliberate premeditation was correct, clear, and emphatic, and, in context, would not have confused the jury. [584-585]

At a trial of a first degree murder indictment, there was no basis in the evidence for the judge to have given an instruction on involuntary manslaughter. [585-586]

In a murder case, the judge correctly denied, without a hearing, the defendant's motion for a new trial, where the defendant failed to show that the grand jury indictment had been procured through intentional misstatements by a police witness or improper mention of the defendant's arrest record, and where the defendant failed to demonstrate that his counsel rendered ineffective assistance in failing to call a certain witness at trial. [586-587]

No reason appeared on the record of a murder trial to warrant this court to exercise its power under G. L. c. 278, § 33E, to reduce the verdict or to grant a new trial. [587-588]

INDICTMENT found and returned in the Superior Court Department on April 27, 1994.

The case was tried before *Richard E. Welch, III,* J., and a motion for a new trial, filed on April 16, 1997, was heard by him.

*Charles K. Stephenson* for the defendant.

*Robert J. Bender,* Assistant District Attorney (*Gerald P. Shea,* Assistant District Attorney, with him) for the Commonwealth.

FRIED, J. The defendant, Alfred Jenks, was convicted of murder in the first degree by deliberate premeditation.[1] We consolidate his appeal from that conviction with his appeal

---

[1] Jenks was also convicted of a related firearms offense. He does not challenge that conviction.

from the trial judge's denial without hearing of his pro se motion for a new trial, and affirm both the conviction and the denial of the motion. After reviewing the whole record we decline to exercise our power under G. L. c. 278, § 33E, to order a new trial or to direct entry of a verdict of a lesser degree of guilt.

I

There was testimony and physical evidence sufficient to allow the jury to conclude that Jenks took aim and shot at one Leth Delva or others on a crowded dance floor, that his bullets missed everyone on the floor, and that one of them passed through a wall and killed a young woman who was standing in an entrance hall to the dance floor. The Commonwealth's theory was that Jenks had deliberately sought to kill Delva or others on the dance floor and that he was therefore liable for the killing of the victim on a theory of transferred intent.

The shooting took place at a privately organized dance attended by some 150 people. There were spotty security arrangements designed to prevent the presence of weapons. At one point, Jenks was standing in the entranceway to the dance hall building talking to two women, when Delva sought to get by to enter the building in a manner that Jenks thought was insufficiently respectful. There was a brief exchange of words, at which Jenks pulled his "hoody" down over his head, took a nine millimeter pistol from his waist band and pointed it at Delva. After another brief exchange of words and the intervention of Delva's cousin, Delva lost sight of Jenks and went inside and upstairs to the dance hall. Jenks was able to enter the building at some later point without paying and without being searched. Once inside he went to the bathroom and showed a man the gun he was carrying, removing and replacing the ammunition clip.

· At some later point Jenks encountered Delva on the dance floor. Jenks took the pistol from his waist, saying, "What's up now?" Delva immediately backed away. Others intervened, grabbed for the gun, and knocked Jenks to the floor and the gun out of his hand. Jenks was able to retrieve the gun, and as he was getting to his feet fired five shots at the ceiling in rapid succession. The crowd backed off and headed for the exits. After a pause Jenks fired two more bullets, now at chest height,

straight ahead, and less rapidly.[2] He appeared to be looking for someone as he fired. Delva said that he saw Jenks point the gun at him and heard the gun click but not fire. At that several people again went after Jenks, took the pistol from him and chased him. It was at that point that the pursuers first saw the victim lying in the hall in a pool of blood. She had sustained a fatal bullet wound to the head.

## II

### A

Jenks raises two related issues: that it was misleading for the judge to explain the meaning of the second and third prongs of malice when the murder charge was being sent to the jury solely on the basis of deliberate premeditation; and that the judge should have instructed the jury on involuntary manslaughter. Both issues implicate the divergent pictures of what happened on the night of the killing. The Commonwealth's theory was that, in firing the last two shots, Jenks was holding the gun straight out before him and aiming it at a person or persons in the crowd who were retreating from him and heading for the exits. He was either firing at Delva, whom he had threatened with his gun earlier in the evening, or at those who had just wrestled him to the floor and disarmed him. The defense argued to the jury that the lax security measures had allowed others with guns to be present on the dance floor, that a shot was fired from another gun, and that the fatal shot may have come from some other gun than Jenks's. The defense introduced testimony by one witness that, during the fight on the dance floor, Jenks had been surrounded by persons who kicked and punched him, and that one of those showed a gun. Jenks asked for and received an instruction on voluntary manslaughter and on self-defense, suggesting, as he did in his closing argument, a theory that when he fired on the dance floor after having been knocked to the ground, Jenks was seeking — reasonably or unreasonably — to protect himself. It is only on appeal that Jenks raises the

[2]There was an audiotape running during the shooting which recorded the sound of seven shots. Four bullets were recovered from the ceiling or attic, one from chest height in a joist in the wall near the victim, and one, which tested positive for the presence of blood, from near where the victim lay. One bullet apparently traveled through a wall and out of the premises; it was not recovered.

further possibility that when he rose from the floor he fired all seven shots wildly and unthinkingly, with no intention of hitting anyone.

Because there was no objection on either ground and the judge charged the jury consistently with defense counsel's requests at trial, we review these claims to determine if there was a substantial likelihood of a miscarriage of justice. As to the inclusion of second and third prong malice in the charge, we have stated before that it is better to make clear to the jury that "murder in the first degree by reason of deliberate premeditation relates only to the first prong of malice." *Commonwealth* v. *Diaz, ante* 548, 553 (1998). Where only deliberate premeditation is offered to the jury as a basis for murder in the first degree, the inclusion of instructions on second and third prong malice, even if justified for other reasons,[3] could be confusing without the limiting instruction that only first prong malice supports a deliberate premeditation conviction. Nonetheless, there is no basis for concluding that this caused a substantial likelihood of a miscarriage of justice. The judge's instruction on deliberate premeditation was correct, clear and emphatic, so that "a reasonable juror could only have understood that a guilty verdict . . . by reason of deliberate premeditation required a finding of purposeful conduct that included a finding beyond a reasonable doubt of a specific intent to kill." *Commonwealth* v. *Gibson*, 424 Mass. 242, 247, cert. denied, 117 S. Ct. 2518 (1997). See *Commonwealth* v. *Waite*, 422 Mass. 792, 804 (1996). And such a jury finding was sufficiently supported by the evidence: two of the shots were fired at shoulder level; there was an appreciable pause between the upwardly fired shots that cleared the space around Jenks and the two shoulder-level shots, suggesting that Jenks paused to search out and aim at a particular individual; and there was testimony that he appeared to be doing just that.

As to the omission of the unrequested charge on involuntary manslaughter, the defendant's argument fails. No reasonable view of the evidence would have permitted the jury to find "wanton and reckless" conduct rather than actions from which a "plain and strong likelihood" of death would follow. See

---

[3]The instruction on all three prongs of malice was justified by the fact that the jury were also charged, as it would be in every murder case, on murder in the second degree. See *Commonwealth* v. *Sires*, 413 Mass. 292, 296-297 (1992).

*Commonwealth* v. *Sanna,* 424 Mass. 92, 105 (1997). Even taking as true the story that the defendant presents on appeal — that he was knocked to the dance floor in a struggle, and, as he was rising, shot seven times wildly and without aiming his gun — the dance hall was full of party goers and the defendant knew that he was surrounded by others and therefore by definition shooting into a crowd. Cf. *Commonwealth* v. *Santiago,* 425 Mass. 491, 498 (1997) (suggesting that involuntary manslaughter would be appropriate where defendant shot near, but not at, a crowd). Firing a pistol seven times in a crowded room is more than wanton and reckless conduct risking substantial harm; it is malicious conduct in the plainest sense. The judge was not obliged to instruct on involuntary manslaughter, and defense counsel did not err by not pressing for such an instruction.

## B

Jenks's pro se motion for a new trial raised three issues: that the grand jury indictment had been procured through intentional misstatements by a police witness and the improper mention of Jenks's record of prior arrests, and that defense counsel was ineffective at trial.[4] The trial judge, who was also the motion judge, denied the motion without a hearing, but issued a careful and comprehensive written memorandum of decision. Ordinarily we defer to the discretion of the trial judge to determine whether an evidentiary hearing is required on a motion for a new trial. See *Commonwealth* v. *Licata,* 412 Mass. 654, 660 (1992). "The judge may rule on the issue or issues presented by [a] motion [for a new trial] on the basis of the facts alleged . . . without further hearing if no substantial issue is raised by the motion or affidavits." Mass. R. Crim. P. 30 (c) (3), 378 Mass. 900 (1979). We conclude that each of Jenks's contentions was fully considered by the judge, that the judge correctly did not require a hearing on them, and that he rejected them for the most convincing reasons.

Jenks's first claim is that in his testimony before the grand jury a police officer misstated the substance of an interview

---

[4]The Commonwealth avers that Jenks filed his notice of appeal from the denial of the new trial motion late. Although it is unclear whether a notice of appeal was ever filed, Jenks did timely file a motion for permission to file his notice of appeal late. On appeal, the Commonwealth neglects to mention that it assented to that motion below, thereby effectively removing any possibility that the motion to file late would not be allowed.

with one Ferd Casimir, who witnessed the shooting. Jenks argues that Casimir told the police that he believed Jenks was acting in self-defense, but that the police failed to relay this opinion to the grand jury. But the Commonwealth was not obliged to relate this sort of opinion testimony, particularly given that it did present other potentially exculpatory evidence to the grand jury that the defendant was assaulted by others on the dance floor prior to the shooting. This was not an issue requiring a hearing; it could easily be disposed of on the written record.

The second of Jenks's grand jury claims related to a police officer's reading Jenks's own statement, which included a reference to Jenks's prior arrests, to the grand jury. The judge found that "those portions [of the statement] were inadvertently related to the [g]rand [j]ury," and not "with the intention of obtaining the indictments." Commonwealth v. Freeman, 407 Mass. 279, 283 (1990). Moreover, the prosecutor promptly cautioned the grand jury to ignore completely the mention of the prior arrests. Finally, the judge very reasonably found that, because Jenks had admitted that he had been carrying a handgun that evening, "it is unlikely that his further admission [of prior arrests on gun and assault and battery charges] would have a significant prejudicial impact that would infect the [g]rand [j]ury proceedings."

The judge also properly disposed of the ineffective assistance of counsel claim without a hearing. Jenks's principal complaint was that at trial his counsel did not call one Clovis Legister, the disc jockey at the dance, to testify to what he saw of the altercation on the dance floor. Legister's testimony might have served to support some aspects of Jenks's contentions that he fired in self-defense or that he fired wildly and with no intention of hitting anyone. But the judge found that Legister's statement also contained matter that would have been damaging to Jenks, and that Jenks's counsel, whom the judge went out of his way to commend, made a reasonable tactical decision to call instead Legister's fiancée, Laurie Ann Galante, who gave testimony on these matters at least as helpful to Jenks. No substantial issue was raised requiring a hearing.

III

Having reviewed the whole record we conclude that there is no reason to exercise our power under G. L. c. 278, § 33E, to

order a new trial or to direct entry of a verdict of a lesser degree of guilt. Jenks came to the dance armed. He was looking for trouble. When he did not find it, he made it. And an innocent young woman was killed.

*Judgment affirmed.*

*Order denying motion for new trial affirmed.*