## Commonwealth *vs.* Preston Lee Gilbert.

Suffolk. March 6, 2006. - July 5, 2006.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, & Cordy, JJ.

*Practice, Criminal,* Postconviction relief, New trial, Verdict, Instructions to jury. *Malice.*

This court concluded that the "gatekeeper" provision of G. L. c. 278, § 33E, applied in a situation in which this court had previously affirmed a conviction of murder in the first degree on direct appeal, and a judge in the Superior Court thereafter set aside the verdict of murder in the first degree and reduced it under Mass. R. Crim. P. 25 (b) (2), because the plain language of the statute directed all appeals from postconviction motions in a capital case to a single justice of this court, and until the Superior Court judge's postrescript order was reviewed on appeal, the case remained a capital case for purposes of § 33E. [164-165]

A Superior Court judge, presented with a postappeal motion for a new trial filed pursuant to Mass. R. Crim. P. 30 (b), had the authority under Mass. R. Crim. P. 25 (b) (2), to reduce, sua sponte, a verdict of murder in the first degree to murder in the second degree, where the motion could have been filed under either rule 25 (b) (2) or rule 30 (b) and, given the nature of the errors claimed, fell just as appropriately under rule 25 (b) (2), which provides trial judges with the flexibility to fashion appropriate relief after a verdict has been returned; and where the relief fashioned took into account the passage of time, which would make it difficult or impossible for the Commonwealth to try the case again. [165-169]

A Superior Court judge, presented with a postappeal motion for a new trial filed pursuant to Mass. R. Crim. P. 30 (b), did not abuse his discretion in reducing a verdict of murder in the first degree to murder in the second degree, where, despite the error in the trial judge's instruction to the jury on premeditation and malice, a new trial was not necessary because the presence of malice, correctly understood, could be ineluctably inferred from the evidence. [169-176]

Indictment found and returned in the Superior Court Department on January 17, 1991.

Following review by this court, 423 Mass. 863 (1996), a motion for a new trial, filed on September 5, 2003, was heard by *Ralph D. Gants,* J., and a motion for reconsideration of the reduction of the verdict was also heard by him.

A request for leave to appeal was allowed by *Cordy*, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him.

*Richard J. Fallon* for the defendant.

*Peter D'Angelo*, Assistant District Attorney, for the Commonwealth.

MARSHALL, C.J. At issue in this appeal is whether a judge in the trial court, presented with a postappeal motion for a new trial filed pursuant to Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001), has the authority to order the entry of a finding of guilty of a lesser offense than found by the jury under Mass. R. Crim. P. 25 (b) (2), 378 Mass. 896 (1979), rather than ordering a new trial. We conclude that he does. We affirm the judge's order setting aside the verdict of murder in the first degree and reducing the verdict to murder in the second degree.

1. *Background.* After a jury trial in 1992, the defendant was convicted of murder in the first degree on a theory of deliberate premeditation. Following plenary review under G. L. c. 278, § 33E, we affirmed the conviction and rejected the defendant's request for a new trial or the entry of a lesser degree of guilt. *Commonwealth* v. *Gilbert*, 423 Mass. 863, 873 (1996). Some twelve years after the homicide,[1] the defendant filed a motion in the Superior Court, pursuant to Mass. R. Crim. P. 30 (b),[2] seeking a new trial on the ground that the jury instructions on premeditation and malice were flawed.[3] In a carefully reasoned memorandum and decision, a judge other than the original trial

---

[1]The homicide occurred on January 7, 1991. The defendant was convicted of murder in the first degree in February, 1992, and his conviction was affirmed in December, 1996. See *Commonwealth* v. *Gilbert*, 423 Mass. 863 (1996). The defendant filed his motion for a new trial in September, 2003.

[2]Rule 30 (b) of the Massachusetts Rules of Criminal Procedure, as appearing in 435 Mass. 1501 (2001), provides: "The trial judge upon motion in writing *may grant a new trial* at any time if it appears that justice may not have been done. Upon the motion the trial judge shall make such findings of fact as are necessary to resolve the defendant's allegations of error of law." (Emphasis added.)

[3]The defendant argued that the erroneous instructions created a substantial risk of a miscarriage of justice because the jury "may have convicted of first degree murder while only finding what under correct law was second degree murder, or even manslaughter."

judge[4] concluded that the instructions were erroneous, and that the erroneous instructions created a substantial risk of a miscarriage of justice. He set aside the jury's verdict of murder in the first degree, but rather than ordering a new trial as the defendant had requested, he sua sponte offered the Commonwealth the opportunity to elect whether it would accept a reduction in the verdict to murder in the second degree or whether it would seek a new trial on the original indictment. Over the defendant's objection, the Commonwealth accepted the verdict reduction. The judge denied the defendant's motion for reconsideration and ordered that the jury's verdict be reduced to murder in the second degree. The judge cited Mass. R. Crim. P. 25 (b) (2) as the source of his authority to do so.[5]

The defendant petitioned a single justice of this court, pursuant to the "gatekeeper" provision of G. L. c. 278, § 33E, for leave to appeal. Responding to the Commonwealth's suggestion that the gatekeeper provision of § 33E did not apply in the circumstances of this case, the single justice allowed the defendant's petition under § 33E and transferred the appeal to this court pursuant to G. L. c. 211, § 4A.

2. *Facts.* The facts concerning the homicide are described in *Commonwealth* v. *Gilbert, supra,* and we need not detail them here. We note those additional facts that are relevant to the postconviction proceedings. As summarized in the amended bill of particulars, the Commonwealth's theory was that the victim "died as a result of her [carotid] arteries being crushed and torn. A hand, fist or cane, all could have inflicted the damage done to the deceased's carotid arteries, resulting in her death . . . ." At trial the Commonwealth's chief medical examiner, a

[4]Because the original trial judge had retired, the motion was assigned to a different judge of the same court. See *Commonwealth* v. *Carter,* 423 Mass. 506, 512 n.7 (1996).

[5]Rule 25 (b) (2) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 896 (1979), provides: "Motion after Discharge of Jury. If the motion [for a required finding of not guilty] is denied and the case is submitted to the jury, the motion may be renewed within five days after the jury is discharged and may include in the alternative a motion for a new trial. If a verdict of guilty is returned, the judge may on motion set aside the verdict and order a new trial, or order the entry of a finding of not guilty, or order the entry of a finding of guilty of any offense included in the offense charged in the indictment or complaint."

forensic pathologist, opined that the victim died of "blunt neck trauma, which involved severe hemorrhages to her carotid arteries caused by blows or forceful pushes from thumbs, fingers, or a rounded edge," the result of a force "similar to . . . strangulation." See *Commonwealth* v. *Gilbert, supra* at 865. The medical examiner also testified concerning extensive injuries inflicted on other parts of the victim's body, some of which he characterized as "defensive wounds." *Id.*

The defense was that the victim died of "synergistic intoxication" after ingesting a toxic combination of aspirin and Tylenol, and that the injuries to her carotid arteries were caused by unsuccessful attempts to resuscitate her. The defendant, who testified at the trial, was the only person with the victim at the time of her death. He denied striking the deceased with his cane, his fists, or any other object, and denied kicking her, kneeling on her stomach, or battering her on the dates in question. A defense expert testified that there was an "absence of findings" consistent with strangulation, noting that there were no fingerprints on the victim's neck, no neck fractures, no petechial hemorrhages, and no evidence of hemorrhage in the strap muscles of the neck.

3. *Application of the "gatekeeper" provision.* The Commonwealth argues here, as it did in the county court, that the "gatekeeper" provision of G. L. c. 278, § 33E, does not apply when this court has affirmed a conviction of murder in the first degree on direct appeal, and a judge in the Superior Court thereafter sets aside the verdict of murder in the first degree and reduces the verdict under rule 25 (b) (2). The plain language of the statute is to the contrary: in a capital case, G. L. c. 278, § 33E, directs "all appeals from postconviction motions to a single justice of this court." *Commonwealth* v. *Francis,* 411 Mass. 579, 583 (1992).[6] In the *Francis* decision, a Superior Court judge had allowed a motion for a new trial some twenty years after this court had affirmed the defendant's conviction of

---

[6]General Laws c. 278, § 33E, provides that, in a capital case, "[i]f *any* motion is filed in the superior court after rescript, no appeal shall lie from the decision of that court upon such motion unless the appeal is allowed by a single justice of the supreme judicial court on the ground that it presents a new and substantial question which ought to be determined by the full court" (emphasis added).

murder in the first degree. This court rejected the Commonwealth's argument in that case that the Legislature had not intended the "gatekeeper" provision to apply to appeals by the Commonwealth. The "plain meaning" of the statute, this court ruled, was clear: "In a capital case, *no* appeal shall lie from a ruling on a postconviction motion without first having been allowed by a single justice of this court" (emphasis in original). *Id.* at 583-584. This, the court said, is not only consistent with the Legislature's intent, but "promotes efficient resolution of postconviction claims" in capital cases. *Id.* at 584. Until a Superior Court judge's postrescript order is reviewed on appeal (or the time for taking an appeal expires and there is no appeal), the Superior Court judge's order does not effect a final change in the defendant's conviction and the case remains a "capital case" for purposes of § 33E. The defendant stands convicted of murder in the first degree until this court says otherwise, or until the appellate period has run without an appeal being filed. See *Commonwealth* v. *Davis*, 410 Mass. 680, 683 (1991) (G. L. c. 278, § 33E, "expressly prohibits an appeal from 'any motion' filed in the Superior Court after § 33E review without the leave of a single justice of this court").[7]

Concluding that the motion judge's reduction of the verdict from murder in the first degree to murder in the second degree was a new and substantial question that ought to be determined by the full court, the single justice was correct to allow the defendant's appeal to proceed under G. L. c. 278, § 33E.

4. *Authority to reduce the verdict.* The defendant challenges the relief granted by the motion judge in two respects. He argues that the motion judge, having concluded that the jury instructions were both erroneous and prejudicial to the defendant, did not have the authority to reduce, sua sponte, the verdict to murder in the second degree, but was required by rule 30 to order a new trial. He next claims that, assuming the judge had such authority, the presence of malice cannot be "ineluctably

---

[7]In contrast, the gatekeeper provision in G. L. c. 278, § 33E, does not apply after *this court* on a direct appeal has reduced a verdict from murder in the first degree pursuant to its authority under G. L. c. 278, § 33E. See *Commonwealth* v. *Perry*, 424 Mass. 1019, 1020 (1997); *Commonwealth* v. *Lattimore*, 400 Mass. 1001, 1001 (1987). In such cases, the defendant does not thereafter stand convicted of murder in the first degree. *Id.*

inferred" from the evidence, *Commonwealth* v. *Azar*, 435 Mass. 675, 688 (2002), *S.C.*, 444 Mass. 72 (2005), quoting *Commonwealth* v. *Vizcarrondo*, 427 Mass. 392, 397 (1998), *S.C.*, 431 Mass. 360 (2000), and that the only appropriate relief in this case is a new trial.[8] We consider first the judge's authority to reduce the verdict, and then turn to consider whether the relief the judge actually granted was proper.

The motion judge carefully explained his reasons for offering the Commonwealth the choice of retrying the defendant for murder in the first degree or accepting a reduced verdict of murder in the second degree. Noting the length of time that had transpired between the homicide and the defendant's motion for new trial, he concluded that "simply ordering a new trial would be an undeserved windfall for the defendant because the jury was plainly unanimous in finding, at a minimum, that the defendant intended to inflict, at least, grievous bodily harm on ·[the victim] that resulted in her death, which is sufficient for a finding of murder in the second degree." Construing the rules of criminal procedure "to secure simplicity in procedure, fairness in administration, and the elimination of expense and delay," Mass. R. Crim. P. 2 (a), 378 Mass. 844 (1979), we agree with the Commonwealth that the judge acted appropriately in ordering relief other than a new trial.

Rule 30 (b) permits a judge to order a new trial "at any time if it appears that justice may not have been done." The second sentence of rule 25 (b) (2) similarly provides that a judge "may on motion set aside the verdict and order a new trial." The latter rule also permits a judge to "order the entry of a finding of not guilty, or order the entry of a finding of guilty of any offense included in the offense charged in the indictment or complaint." Mass. R. Crim. P. 25 (b) (2). The motion judge referred to the relief available under rule 30 (b) as a "subset" of the relief available under rule 25 (b) (2). The two rules do overlap in significant respects. Neither rule 30 (b) nor rule 25 (b) (2) provides an outer limit of time within which a defendant must file such a motion. See *Commonwealth* v. *Keough*, 385

---

[8]The defendant, however, suggests that this court, under G. L. c. 278, § 33E, could reduce the verdict to murder in the second degree or manslaughter.

Mass. 314, 318 (1982) (absence of time limit on filing of rule 25 [b] [2] motion "paralleled" by absence of any time limit on filing of motion for new trial under rule 30). See also *Commonwealth* v. *Aguiar*, 400 Mass. 508, 511 n.3 (1987) (recognizing "analogy" between rule 30 [b] and rule 25 [b] [2]). Both rules permit a judge to act where justice may not have been done. Rule 30 (b) says so explicitly, while rule 25 (b) (2) says so implicitly. See, e.g., *Commonwealth* v. *Rolon*, 438 Mass. 808, 820-821 (2003) (judge may reduce verdict under rule 25 [b] [2], where lesser verdict may be more consonant with justice).

The defendant, of course, sought relief only in the form of a new trial under rule 30. But the nature and substance of the defendant's motion was that his conviction for murder in the first degree could not stand because of errors in the instructions given to the jury. That motion could have been filed under either rule 25 (b) (2) or rule 30 (b) and, given the nature of the errors claimed, falls just as appropriately under rule 25 (b) (2). See *Commonwealth* v. *Preston*, 393 Mass. 318, 322-323 (1984). Reflecting a legislative grant of authority to this effect, rule 25 (b) (2) provides trial judges with the flexibility to fashion appropriate relief after a verdict has been returned. See *Commonwealth* v. *Woodward*, 427 Mass. 659, 666 (1998) (authority of trial judge under rule 25 [b] [2] similar to Supreme Judicial Court's authority under G. L. c. 278, § 33E). The defendant's selection of one particular remedial vehicle (in this case rule 30 [b]) does not permit him to dictate the relief that is appropriate and just. See *Commonwealth* v. *Preston*, *supra* at 321 (judge did not err in granting new trial under rule 25 [b] [2], even though defendant's motion filed under rule 30 [b]). Because the defendant's motion for a new trial could have been filed under either rule, and "[n]othing of consequence turn[ed] on this difference," we treat the motion " 'according to [its] nature and substance' rather than [its] technical form." *Commonwealth* v. *Preston*, *supra* at 322-323, quoting *Fabrizio* v. *U.S. Susuki Motor Corp.*, 362 Mass. 873 (1972). It was, in its essence, a request for appropriate and just relief from the conviction of murder in

the first degree.[9] Cf. *Commonwealth* v. *Lennon*, 399 Mass. 443, 449 (1987) (where conviction may not stand because of "error or the requirements of justice," and jury's determination that defendant is guilty of lesser included offense is not infected with error, "we have the option of directing a reduction in the verdict . . . rather than ordering a new trial").

This court has long recognized that, in granting relief in capital cases, the rights of the public as well as the interests of the defendant must be considered. See *Commonwealth* v. *Green*, 17 Mass. 515, 521-522 (1822). See also *Commonwealth* v. *Curtis*, 417 Mass. 619, 623 (1994) (where issues could have been raised during direct appeal, Commonwealth's interest in "fair and efficient administration of justice" is "to be considered along with the ever-present concern that justice not miscarry for the defendant"). Here the motion judge noted that the "passage of time apparently has made it difficult or impossible for the Commonwealth to try the case again." He appropriately fashioned relief that took that fact into account. *Id.* (citing difficulty of Commonwealth in "reassembl[ing] its case" and "considerabl[e] challeng[e]" time lapses present to witnesses' memories as "factors" to be considered in fashioning relief).

Trial judges have long held the authority at common law to modify a judgment where a jury's verdict on a greater offense cannot stand, but their finding on a lesser included offense is "amply supported by the evidence" and "unaffected" by the error. See *Commonwealth* v. *Clifford*, 254 Mass. 390, 394 (1926) (upholding trial judge's denial of defendant's motion for new trial and judge's entry of judgment for lesser included offense where evidence supported lesser but not greater offense and defendant was not prejudiced by judgment entered).[10] While trial court judges are permitted to alter a jury's verdict only on

---

[9]That a trial court judge's authority under rule 25 (b) (2) is not limited by the particular form of relief requested by a defendant is apparent. The rule accords judges three options, see *Commonwealth* v. *Keough*, 385 Mass. 314, 317-318 (1982), including the discretion to reduce a verdict to a conviction of a lesser offense, even where the evidence supports the verdict returned by the jury. See *Commonwealth* v. *Gaulden*, 383 Mass. 543, 552 (1981). A defendant who has requested a new trial is not entitled to limit the judge's discretion to accord less expansive relief.

[10]Cf. *Commonwealth* v. *Howard*, 386 Mass. 607, 608, 611 (1982) (motion for directed verdict on armed robbery denied; where jury instructions incorrect

a motion, *Commonwealth* v. *LeRoy*, 376 Mass. 243, 247 (1978), subject to that requirement our common law also supports the authority of a motion judge to enter a judgment on a lesser included offense. *Commonwealth* v. *Clifford, supra.*

Unlike many reported cases involving rule 25 (b) (2), see, e.g., *Commonwealth* v. *Gaulden*, 383 Mass. 543, 555-556 (1981), this case involves an error at trial, not a "proportionality" reduction. If a trial judge has the discretionary authority to reduce a verdict when there are no errors in the trial proceedings, but nevertheless concludes that a different verdict would rectify a "disproportionate" verdict, *Commonwealth* v. *Gaulden, supra* at 556, or would be more "consonant with justice," *Commonwealth* v. *Seit*, 373 Mass. 83, 94 (1977), we see no reasoned basis under our rules or otherwise to preclude a similar reduction where an error does not affect the lesser included offense that is supported by the evidence. *Commonwealth* v. *Clifford, supra* at 393-394 (where portion of general verdict is defective, portion that is "legally and properly rendered" valid for purposes of judgment and sentencing).

5. *Error in jury instructions.* We now turn to consider whether the judge abused his discretion in reducing the verdict to murder in the second degree. The case is here in an unusual posture. As we shall describe, the Commonwealth did not appeal from and does not challenge the judge's conclusion that the jury instructions on premeditation and malice were erroneous or that the er-

and defendant sought resentencing on lesser included offense, court remanded for resentencing); *Commonwealth* v. *Franks*, 365 Mass. 74, 80, 82 (1974); *Commonwealth* v. *Novicki*, 324 Mass. 461, 467 (1949), quoting *Commonwealth* v. *Lawless*, 103 Mass. 425, 434 (1869) ("so far as the verdict rendered is legally and properly rendered, it may avail for the purposes of judgment and sentenc[ing]"; judgment may be corrected on appeal or remanded to Superior Court). See *Commonwealth* v. *Colon*, 52 Mass. App. Ct. 725, 731 (2001) (where proper instruction not given, judgment modified, with Commonwealth's agreement, to show conviction of unarmed robbery and case remanded for resentencing without need for new trial); *Commonwealth* v. *Powell*, 40 Mass. App. Ct. 430, 439 (1996) (where required finding of not guilty of armed robbery should have been allowed, judgment modified and case remanded for resentencing on unarmed robbery); *Commonwealth* v. *Robinson*, 26 Mass. App. Ct. 441, 443 (1988) (where defendant convicted of greater offense than was proper, erroneous verdict may stand as verdict of guilty of lesser included crime without need for new trial); *Commonwealth* v. *Eaton*, 2 Mass. App. Ct. 113, 119-120 (1974).

roneous jury instructions created a substantial risk of a miscarriage of justice.[11] Cf. *Commonwealth* v. *Rolon*, 438 Mass. 808, 822 (2003). In the Superior Court the defendant prevailed on his postdirect appeal claim of prejudicial error in the jury instructions, but here it is he who challenges the judge's subsequent determination that the jury had found, in the judge's words, "at least second prong malice beyond a reasonable doubt when [they] returned [their] guilty verdict," such that a reduction to murder in the second degree was warranted. We now consider whether the judge abused his discretion in making that determination. *Id.* (reduction of verdict constituted "an abuse of discretion"). To do so we must first describe the errors in the jury instructions as they pertain to the evidence at trial, before we turn to consider whether the presence of malice can be "ineluctably inferred" from the evidence. *Commonwealth* v. *Azar*, 435 Mass. 675, 688 (2002), *S.C.*, 444 Mass. 72 (2005).

As noted earlier, the defendant was convicted of murder in the first degree on a theory of deliberate premeditation. However, as the Commonwealth now apparently concedes, the motion judge correctly concluded that the jury instructions on malice were erroneous. Specifically, the trial judge failed to instruct the jury that "[o]nly the first prong of malice [i.e., a specific intent to kill] can support a conviction for deliberately premeditated murder," *Commonwealth* v. *Johnson*, 435 Mass. 113, 119-120 (2001), and defined deliberate premeditation in terms that included all three prongs of malice.[12] She further defined the so-called third prong of malice incorrectly to include

[11]The Commonwealth could have challenged the motion judge's initial determination conditionally granting the defendant relief: the motion judge "expressly recognized" that the Commonwealth did not waive its rights to do so by accepting a reduction in the verdict to murder in the second degree.

[12]The judge defined a finding of malice necessary to support a verdict of murder in the first degree as "any unexcused or unjustified intent to kill, an intent to do grievous harm, or intent to do an act creating a plain and strong likelihood that death or grievous harm will follow."

She instructed that to find murder in the first degree, "the Commonwealth must prove beyond a reasonable doubt that the killing was done with deliberate premeditation." She distinguished between murder in the first degree and murder in the second degree by instructing that the latter "does not require the proof of deliberate premeditation, but it does require the unlawful killing of a human being with malice aforethought."

grievous bodily harm language.[13] See *Commonwealth* v. *Azar*, *supra* at 683-684; *Commonwealth* v. *Vizcarrondo*, 427 Mass. 392, 394-398 (1998), *S.C.*, 431 Mass. 360 (2000).

Likewise, the Commonwealth does not challenge the motion judge's determination of the prejudicial effect of the erroneous instructions. See *Commonwealth* v. *Jenks*, 426 Mass. 582, 585 (1998). The prejudicial effect of the erroneous jury instructions was particularly evident in this case because on two separate occasions the jury asked to be reinstructed on the elements of murder and malice. In her first supplemental instructions, the trial judge essentially repeated her earlier instructions, once again erroneously instructing the jury that the element of malice for a finding of deliberately premeditated murder could be satisfied by both the so-called second and third prongs of malice. See notes 12 and 13, *supra*. Later during their deliberations the jury asked an even more pointed question: "Does deliberate premeditation to do *grievous bodily harm* which sets in motion a set of circumstances which leads to death constitute murder one or murder two?" (emphasis added). In response to this question, the judge once again repeated the problematic instructions given earlier. The motion judge's conclusion that the erroneous instructions resulted in a substantial risk of a miscarriage of justice is clearly warranted. See *Commonwealth* v. *Randolph*, 438 Mass. 290, 297-298 (2002).

Therefore, the only remaining question, which is pivotal, is whether a new trial is not necessary because the presence of malice, correctly understood, can be "ineluctably inferred" from the evidence. *Commonwealth* v. *Vizcarrondo*, *supra* at 397. We conclude that the motion judge made the correct determination, as we now explain.

Both murder in the first degree and murder in the second

---

[13]The correct definition of third-prong malice permits an inference of malice only in situations where a reasonable person would recognize a plain and strong likelihood of death, but the judge instructed: "There is a third form of malice which is that the defendant intended to do an act creating a plain and strong likelihood that death *or grievous bodily harm* would follow. If in the circumstances known to the defendant that a reasonable prudent person would have known of the plain and strong likelihood that death *or grievous bodily harm* would follow a contemplated act, malice may be found without any actual intent to kill or do grievous bodily harm and without any foresight by the defendant of such consequence" (emphasis added).

degree require proof of malice, without which "an unlawful killing can be no more than manslaughter." *Id.* at 396, quoting *Commonwealth* v. *Judge*, 420 Mass. 433, 437 (1995). To rebut any finding of murder, the defendant's strategy at trial was to create a reasonable doubt in the minds of the jury that he inflicted the neck trauma that caused the victim's death. He both denied striking the victim in any manner and offered evidence that the victim had died as the result of "synergistic intoxication," arising from an attempted suicide by an overdose of Tylenol and aspirin. Her internal injuries, he posited, were caused by failed attempts to resuscitate the victim. In returning a verdict of murder in the first degree, the jury clearly rejected the defendant's theory of the cause of death, and concluded beyond a reasonable doubt that the defendant had inflicted a blunt neck trauma that killed the victim, a point now conceded by the defendant.

In determining whether malice could be "ineluctably inferred" from the evidence, the motion judge framed the question as "whether the jury, having found that the defendant violently assaulted [the victim] and that his assault caused her death, could have had a reasonable doubt as to whether the defendant *intended to cause [the victim] grievous bodily harm* when he committed the acts that killed her" (emphasis added). The motion judge concluded that it "may be 'ineluctably inferred' that the jury found at least second prong malice beyond a reasonable doubt when [they] returned [their] guilty verdict" because the physical evidence regarding the severity of the victim's injury did not, in the judge's words, "reasonably permit the inference that the defendant caused those injuries without *intending* to cause her grievous bodily harm" (emphasis added).

The defendant takes issue with that ruling, pointing out that the trial judge improperly defined the third prong of malice to include the grievous bodily harm language. It is therefore "not clear," he argues, "that the jury [were] unanimous in finding, at a minimum, *intent* to inflict grievous bodily harm" (emphasis added), that is, second prong malice. Rather, he posits, because of the erroneous instructions on third prong malice, the jury could (improperly) have inferred malice by finding a plain and strong likelihood that grievous bodily harm (not death) would

follow the defendant's acts, warranting only a verdict of involuntary manslaughter, not murder. See *Commonwealth* v. *Lyons*, 444 Mass. 289, 293 (2005), and cases cited. We reject the defendant's argument, but for reasons different from those advanced by the motion judge.

It is not necessary to infer an intent to inflict grievous bodily harm (second prong malice) as the motion judge did, because we agree with the Commonwealth that, while the trauma to the victim's carotid arteries may *permit* an inference of second prong malice, an inference of malice is *ineluctable* under the third prong of malice. In such circumstances the erroneous jury instructions on third prong malice are inconsequential. See *Commonwealth* v. *Fryar*, 425 Mass. 237, 248, cert. denied, 522 U.S. 1033 (1997) (inclusion of grievous bodily harm language in third prong malice instruction harmless). This is because, as we shall detail, the evidence, taken in its light most favorable to the defendant, required the jury, at a minimum, to find that "in the circumstances known to the defendant,[14] a reasonably prudent person would have known that according to common experience," *Commonwealth* v. *Azar*, 435 Mass. 675, 682 (2002), *S.C.*, 444 Mass. 72 (2005), "a plain and strong likeli-

---

[14]There is no merit in the defendant's speculative argument that the jury might have found that he lacked the necessary subjective intent necessary for malice based on his alleged alcoholism or intoxication. There was no instruction requested or given on the subject, and no evidence concerning the alleged impact of alcohol on the defendant, his ability to form specific intent, or even on his knowledge of the circumstances of the victim's death. See *Commonwealth* v. *Candelario*, 446 Mass. 847, 856-857 (2006); *Commonwealth* v. *Freiberg*, 405 Mass. 282, 287, cert. denied, 493 U.S. 940 (1989) (failure to give intoxication instruction did not create substantial likelihood of miscarriage of justice where "defendant's behavior did not manifest signs of intoxication or mental impairment triggered by intoxication"). See also *Commonwealth* v. *Sanna*, 424 Mass. 92, 101-102 (1997) ("Where no evidence exists that the defendant did not have knowledge of the circumstances of the killing, an error in the instruction on the effect of intoxication on the defendant's knowledge does not constitute reversible error"); *Commonwealth* v. *Sires*, 413 Mass. 292, 299 (1992) (where trial judge omitted requested instruction on effects of intoxication on third prong of malice, no error where "no evidence that the defendant did not know what he was doing at the time of the killing"); *Commonwealth* v. *Blake*, 409 Mass. 146, 155-156 (1991) (no entitlement to instruction concerning effects of intoxication on third prong of malice, where no showing that intoxication had any relevant effect on knowledge of circumstances of killing). The defendant testified that, on the day in question, he consumed two beers.

hood *of death* would follow the defendant's actions" (emphasis added). *Id.* at 689.

We have reviewed the transcript and, in its light most favorable to the defendant, the evidence concerning the victim's death that is consistent with the jury's verdict is as follows. The defendant testified that, in the evening preceding the victim's death, the victim was "weak," so "weak" that she could not rise from the couch. She also complained of being "sore." On the day she died, he testified that she again complained of being "sore," of "burning up", and that she was sitting, bent over with her head on her legs, several hours before her death. He said that she was breathing heavily just before she died. When the police arrived at the apartment shared by the victim and the defendant, the victim was naked, "lying on a couch," "covered by a blanket," and showed no signs of life. *Commonwealth* v. *Gilbert*, 423 Mass. 863, 864 (1996).

In a subsequent autopsy, the Commonwealth's chief medical examiner determined that the blunt neck trauma that killed the victim "involved severe hemorrhages to her carotid arteries caused by blows or forceful pushes from thumbs, fingers, or a rounded edge." *Id.* at 865. The medical examiner characterized the injuries as the result of "a relatively strong force, a jabbing force, similar to what I see in a neck strangulation."[15] He also testified that the victim's right carotid artery was hemorrhaged in eight separate areas, the left carotid artery was hemorrhaged in three places, and that the victim lived from a few seconds to five minutes after the injuries to the arteries.[16] The defense expert, in turn, challenged the conclusion of strangulation as a cause of death.

We agree with the defendant that we do not know whether the jury concluded that all the trauma to the victim's neck was inflicted by the defendant. Viewed in the light most favorable to

---

[15]At trial, the Commonwealth's expert confirmed his grand jury testimony that "[t]his is not a minor force, this is a good bit of force, somebody getting in there with a hand or both hands and like really strangling or struggling to try to get in there."

[16]The same expert testified that, if force sufficient to cause hemorrhaging deep within a victim's neck is applied "relatively slowly," "you don't see bruising," and that marks on the skin also would be decreased if there was a buffer of cloth on the neck.

the defendant, some of the "injuries" to her carotid arteries could have been caused by others' attempts to resuscitate her, as the defendant's expert suggested. But we do know that the jury found the defendant inflicted the injury that was fatal.[17] Based on the jury's conclusion that the defendant inflicted the fatal trauma to the victim's neck, the nature and extent of that trauma, and the fact that the victim was (as the defendant testified) weak, "burning up," and "sore,"[18] coupled with the lack of any evidence consistent with the jury's verdict that the trauma was unintentional,[19] the evidence did not warrant a finding that, in inflicting the fatal trauma to the victim's neck, the defendant intended conduct that, viewed objectively, posed less than a risk

[17]Taking the evidence in its light most favorable to the defendant, we assume that there was one fatal injury inflicted by the defendant.

[18]On appeal, the defendant concedes that there is "a good argument" that the third prong malice error was not prejudicial if the death was by "manual strangling (hand)" or by "use of a weapon (cane)." He argues, however, that if the jury concluded that the neck injuries were caused by use of a fist, then the error was prejudicial. What the defendant's argument omits, however, is that the victim "died as the result of her [carotid] arteries being crushed and torn," a finding not challenged on appeal. Where, as here, there is no claim that the injuries were accidental, use of a fist with sufficient force to "crush" or "tear" carotid arteries is an act that a reasonably prudent person would know creates "plain and strong likelihood that death" will result. *Commonwealth* v. *Mahnke*, 368 Mass. 662, 702-703 (1975), cert. denied, 425 U.S. 959 (1976). This is not a case of a "a simple blow with the hand administered to a healthy adult," which we characterized as an "almost-reflexive response" in the *Mahnke* decision. The evidence was that the victim was not in good health, and that the blunt force trauma inflicted on the victim's carotid arteries by the defendant was not a "simple blow" but, rather, of sufficient force to "tear" and "crush" the "soft," "elastic" and "tough" carotid arteries, located "on either side of what we call the neck organs," "relatively deep in" the victim's neck.

[19]Because the jury rejected the defendant's theory that he did not cause the victim's neck trauma, accidental death is not at issue. See, e.g., *Commonwealth* v. *Azar*, 435 Mass. 675 (2002), S.C., 444 Mass. 72 (2005). In that case, the defendant admitted to inflicting some of the injuries on the victim, but argued that his actions were accidental, and that the manner in which the injuries occurred was such that a finding of a plain and strong likelihood of death was not required. Although the jury rejected the defendant's "accident defense," the court reasoned that conflicting evidence about the severity of the injuries and their possible causes precluded the court from finding that the jury found a subjective intent to cause grievous bodily harm. *Id.* at 689 n.11. See *Commonwealth* v. *Campbell*, 352 Mass. 387, 399 (1967) (testimony that defendant did not intend to harm victim, and strangulation was accidental, might warrant finding that killing was without malice).

of a plain and strong likelihood of death. *Commonwealth* v. *Fryar, supra* at 248. Compare *Commonwealth* v. *Russell,* 439 Mass. 340, 346 (2003) (conduct posed danger not less than plain and strong likelihood of death).

The jury's verdict established their conclusion, beyond a reasonable doubt, that the defendant inflicted the trauma to the victim's neck that caused her death.[20] Given the evidence concerning that trauma, a plain and strong likelihood of death, and, therefore, malice sufficient to support murder in the second degree, can be ineluctably inferred from the evidence.

6. *Conclusion.* The challenged erroneous jury instructions called into question the defendant's conviction of murder in the first degree. The evidence, however, permits an ineluctable inference of malice sufficient to support a finding of murder in the second degree. The potential prejudice to the Commonwealth in retrying the defendant after such a long passage of time since the homicide is great. For all of these reasons, it was appropriate for the judge, consistent with the letter and spirit of our rules, to ensure that justice be done, rather than limit the relief to a new trial as requested by the defendant. We affirm the order setting aside the verdict of murder in the first degree. We affirm the order reducing the verdict to murder in the second degree.

*So ordered.*

---

[20]There is no merit to the defendant's suggestion that the prosecutor's closing argument concerning the defendant's physical ability to inflict the trauma to the victim's neck was an attempt to persuade the jury that only a "small" amount of pressure was necessary to cause the fatal injuries. This mischaracterizes the closing argument. Viewed in context, and referencing the victim's torn, manipulated, and hemorrhaged arteries, the prosecutor's comments were directed at rebutting the defense's portrayal of the defendant as having various physical infirmities and, inferentially, being incapable of inflicting the fatal injuries. Moreover, the Commonwealth's expert testified that the force necessary to make the neck hemorrhage was not "small," but that it "would be a relatively strong force, a jabbing force, similar to what I see in a neck strangulation," or a "squeeze [—] something that's a strong force."